UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

DARLA J. CUMMINGS,

                               Plaintiff,      18-CV-00187-FPG

v.                                             DECISION AND ORDER

COMMISSIONER OF SOCIAL SECURITY,

                               Defendant.

## INTRODUCTION

On July 14, 2014, Plaintiff filed an application for disability insurance benefits ("DIB") alleging disability beginning on May 6, 2014. Tr.[1] 149-50. After the application was denied, Plaintiff timely requested a hearing. Tr. 125-26. On November 8, 2016, Plaintiff appeared with an attorney representative, Felice A. Brodsky, Esq., and testified at a hearing before Administrative Law Judge, Mary Mattimore ("the ALJ"). Tr. 47-99. Jeanne Beachler, the Vocational Expert ("VE"), also testified at the hearing. Tr. 93-98. The ALJ issued an unfavorable decision on January 26, 2017. Tr. 14-25. Plaintiff then timely requested review by the Appeals Council. Tr. 147. On January 17, 2018, the Appeals Council denied review making the ALJ's decision the final decision of the Commissioner of Social Security ("the Commissioner"). Tr. 1-5. Plaintiff subsequently filed this lawsuit pursuant to Title II of the Social Security Act (the "Act") seeking review of the final decision of the Commissioner denying her application for DIB.[2] ECF No. 1.

Presently before the Court are the parties' competing motions for judgment on the pleadings. ECF Nos. 17, 23. For the reasons that follow, Plaintiff's motion for judgment on the pleadings

---

[1] "Tr." refers to the administrative record in this matter. ECF Nos. 9, 21.

[2] The Court has jurisdiction over this action under 42 U.S.C. §§ 405(g); 1383(c)(3).

1

(ECF No. 17) is GRANTED, the Commissioner's motion (ECF No. 23) is DENIED, and the matter is REMANDED for further administrative proceedings consistent with this Decision and Order.

## LEGAL STANDARD

### I.  District Court Review

The scope of this Court's review of the ALJ's decision denying benefits to Plaintiff is limited. It is not the function of the Court to determine *de novo* whether Plaintiff is disabled. *Brault v. Soc. Sec. Admin., Comm'r*, 683 F.3d 443, 447 (2d Cir. 2012). Rather, so long as a review of the administrative record confirms that "there is substantial evidence supporting the Commissioner's decision," and "the Commissioner applied the correct legal standard," the Commissioner's determination should not be disturbed. *Acierno v. Barnhart*, 475 F.3d 77, 80-81 (2d Cir. 2007), *cert. denied*, 551 U.S. 1132 (2007). "Substantial evidence is more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Brault*, 683 F.3d at 447-48 (internal citation and quotation marks omitted). "Even where the administrative record may also adequately support contrary findings on particular issues, the ALJ's factual findings must be given conclusive effect so long as they are supported by substantial evidence." *Genier v. Astrue*, 606 F.3d 46, 49 (2d Cir. 2010) (internal quotation marks omitted).

### II.  Disability Determination

An ALJ must follow a five-step sequential evaluation to determine whether a claimant is disabled within the meaning of the Act. *See Parker v. City of New York*, 476 U.S. 467, 470-71 (1986). At step one, the ALJ must determine whether the claimant is engaged in substantial gainful work activity. *See* 20 C.F.R. § 404.1520(b). If so, the claimant is not disabled. If not, the ALJ proceeds to step two and determines whether the claimant has an impairment, or combination of impairments, that is "severe" within the meaning of the Act, meaning that it imposes significant

restrictions on the claimant's ability to perform basic work activities. *Id.* § 404.1520(c). If the claimant does not have a severe impairment or combination of impairments, the analysis concludes with a finding of "not disabled." If the claimant does, the ALJ continues to step three.

At step three, the ALJ examines whether a claimant's impairment meets or medically equals the criteria of a listed impairment in Appendix 1 of Subpart P of Regulation No. 4 (the "Listings"). *Id.* § 404.1520(d). If the impairment meets or medically equals the criteria of a Listing and meets the durational requirement, *id.* § 404.1509, the claimant is disabled. If not, the ALJ determines the claimant's residual functional capacity ("RFC"), which is the ability to perform physical or mental work activities on a sustained basis, notwithstanding limitations for the collective impairments. *See id.* § 404.1520(e)-(f).

The ALJ then proceeds to step four and determines whether the claimant's RFC permits him or her to perform the requirements of his or her past relevant work. 20 C.F.R. § 404.1520(f). If the claimant can perform such requirements, then he or she is not disabled. *Id.* If he or she cannot, the analysis proceeds to the fifth and final step, wherein the burden shifts to the Commissioner to show that the claimant is not disabled. *Id.* § 404.1520(g). To do so, the Commissioner must present evidence to demonstrate that the claimant "retains a residual functional capacity to perform alternative substantial gainful work which exists in the national economy" in light of his or her age, education, and work experience. *See Rosa v. Callahan*, 168 F.3d 72, 77 (2d Cir. 1999) (quotation marks omitted); *see also* 20 C.F.R. § 404.1560(c).

## DISCUSSION

### I.   The ALJ's Decision

At step one of the sequential analysis, the ALJ found that Plaintiff had not engaged in substantial gainful activity since the alleged onset date of May 6, 2014. Tr. 16. At step two, the

ALJ found that Plaintiff suffered from several severe impairments: degenerative disc disease with foot pain and numbness, arthritis, scoliosis, and obesity. *Id.* The ALJ determined that Plaintiff's cholelithiasis, gastro-esophageal reflux disease, anemia, kidney disease, acute kidney failure, hernia with chronic wound, and kidney cancer were non-severe impairments. Tr. 17.

The ALJ proceeded to the third step of the analysis and found that the severity of Plaintiff's impairments did not meet or equal the criteria of any Listing. Tr. 18-19. She then determined that Plaintiff retained the RFC to perform sedentary work with several limitations. Tr. 19. Specifically, the ALJ found that Plaintiff could occasionally kneel, crouch, crawl, and climb ladders, stairs and scaffolds, and must avoid extreme heat, humidity, and wetness. *Id.* Plaintiff could not balance on uneven, narrow, slippery or moving surfaces, operate foot controls with her left or right foot, operate a motor vehicle, and required the freedom to sit and stand at will while remaining on task. *Id.*

At step four, the ALJ found that Plaintiff could not perform her past relevant work. Tr. 24. At step five, the ALJ determined that there were jobs in the national economy that a person of Plaintiff's age, education and work experience could perform, such as a fast food clerk and inspector. Tr. 25. Accordingly, the ALJ concluded that Plaintiff was not disabled.

**II.   Analysis**

    A.    <u>The Appeals Council Erred in Rejecting the New Evidence</u>

Plaintiff argues that remand is warranted because the Appeals Council erroneously denied her review of records submitted by Plaintiff's neurosurgeon, Dr. Fahrbach, that related to Plaintiff's spinal surgery that occurred after the ALJ had issued her decision. ECF No. 17-1, at 13. Specifically, Plaintiff argues that the pre-operative report from January 17, 2017, the operative notes from February 1, 2017, and the post-operative notes from February 14, 2017, were all new

4

and material evidence that should have been relied on by the Appeals Council because they reflected on the severity of Plaintiff's lumbar spine impairment, and could change the outcome of Plaintiff's disability application. *Id.* at 15-18. The Court agrees.

It has been well-established that the Appeals Council must consider additional evidence submitted by a claimant after the ALJ's decision so long as it is new, material, and relates to the period on or before the ALJ's decision. *See* 20 C.F.R. § 416.1470 (a)(5), (b); *see also Lisa v. Sec'y of Dep't of Health & Human Servs. of U.S.*, 940 F.2d 40, 43 (2d Cir. 1991) ("An appellant must show that the proffered evidence is (1) 'new' and not merely cumulative of what is already in the record, and that it is (2) material, that is, both relevant to the claimant's condition during the time period for which benefits were denied and probative.") (internal citations omitted). "If the Appeals Council fails to fulfill its obligations under § [416.1470(b)] 'the proper course for the reviewing court is to remand for reconsideration in light of the new evidence.'" *Wilbon v. Colvin*, Case # 15-CV-756-FPG, 2016 WL 5402702, at *5 (W.D.N.Y. Sep. 28, 2016) (internal citations omitted). Evidence is "new" if it did not exist prior to the ALJ's decision, and is not cumulative of what is already in the record. *See Pollard v. Halter*, 377 F.3d 183, 193 (2d Cir. 2004) (summary order). Furthermore, evidence is "material" when it relates to the period on or before the date of the ALJ's decision, and is probative, meaning there is "a reasonable possibility that the new evidence would have influenced the [Commissioner] to decide claimant's application differently." *Id.*

In the present case, Plaintiff, having received an unfavorable decision from the ALJ, applied to the Appeals Council for review of records received from (1) Eastern Niagara Hospital, dated January 19, 2017 through January 24, 2017, and (2) Catholic Health System, dated January 17, 2017 through February 4, 2017. Tr. 394-12. The Appeals Council rejected them because they did not relate to period at issue. Tr. 2.

5

The Commissioner concedes that the Appeals Council erred in failing to consider the records from Eastern Niagara Hospital because they dated prior to January 26, 2017, the date of the ALJ's decision, but argues that the Appeals Council's rejection of the records from Catholic Health System does not warrant remand because the records do not prove limitations beyond those accounted for by the ALJ in her decision. ECF No. 23 at 15. The Court disagrees.

As a general matter, "medical evidence generated after an ALJ's decision cannot be deemed irrelevant solely because of timing." *Vosburgh v. Comm'r of Soc. Sec.*, 17-CV-6587P, 2019 WL 2428501, at *5 (W.D.N.Y. June 11, 2019) (quoting *Newbury v. Astrue*, 321 F. App'x 16, 18 n.2 (2d Cir. 2009)). "Evidence that is generated after an ALJ's decision may bear on the evaluation of the claim if the evidence directly supports [the claimant's] earlier contentions regarding [her] condition . . . [or] strongly suggests that, during the relevant time period, [her] condition was far more serious than previously thought. *Id.* (internal quotations and citations omitted). Moreover, evidence is material and justifies remand when "a diagnosis emerges after the close of administrative proceedings that 'sheds considerable new light on the seriousness of [a claimant's] condition[.]'" *Lisa v. Sec'y of Dep't of Health & Human Servs. of U.S.*, 940 F.2d 40, 44 (2d Cir. 1991).

Here, the evidence submitted by Plaintiff to the Appeals Council was undeniably new and not cumulative of what had already been in the record. In fact, the operative and postoperative exam notes issued on February 1, 2017, and February 14, 2017, respectively, did not exist at the time the ALJ issued her decision as they reference the spinal surgery that Plaintiff underwent on February 1, 2017, two months after the hearing. Tr. 402-11. "Because the new evidence submitted . . . did not exist at the time of the ALJ's hearing, there is no question that the evidence is 'new'." *Pollard*, 377 F.3d at 193 (internal quotations omitted). Similarly, the January 17, 2017

6

preoperative report is not cumulative even though it was issued prior to the ALJ's decision because it contained the evaluation of Plaintiff's symptoms prior to her lumbar fusion surgery, as well as the discussion about the risks and Plaintiff's expectations associated with the surgery. Tr. 403-04.

The evidence presented to the Appeals Council was also material because it related to Plaintiff's degenerative lumbar spine impairment that existed during the time for which benefits were denied. Moreover, the records directly support many of Plaintiff's earlier complaints of lumbar back pain, and strongly suggest that the degenerative disc disease which she sought disability for, was far more serious than previously thought because it required Plaintiff to undergo a lumbar fusion surgery several weeks after the ALJ's decision. *See Pollard*, 377 F.3d at 193-94 (evidence that post-dated an ALJ's decision is material because it may disclose the severity and continuity of Plaintiff's preexisting impairments). In fact, the February 1, 2017 operative and the February 14, 2017 postoperative reports issued by Dr. Fahrbach and ANP Wegrzyn discussed Plaintiff's L5-S1 disc degeneration, radiculopathy, spinal stenosis, and degenerative scoliosis that she had been experiencing for years prior to the ALJ's hearing decision. Tr. 402-05. Not only did these records show progression of Plaintiff's conditions that led to the transforaminal lumbar interbody fusion surgery, they also confirmed the recommendations of Dr. Mattei, who, six months prior, had suggested that Plaintiff undergo a surgery to decompress the L5 nerve root. Tr. 288. On February 1, 2017, consistent with Dr. Mattei's and his own observations, Dr. Fahrbach performed the surgery to reduce Plaintiff's L5 nerve root compression, and restore foraminal stenosis and the flattening of the L5 nerve root. Tr. 405. Therefore, because the evidence of a surgery that occurred after an ALJ's decision may be relevant to determine whether a claimant was previously disabled, *see Clemons v. Astrue*, No. 12-CV-269A, 2013 WL 4542730, at *7

(W.D.N.Y. Aug. 27, 2013), it was erroneous for the Appeals Council to deny Plaintiff's review of the records relevant to her lumbar interfusion surgery.

The evidence submitted by Plaintiff to the Appeals Council was also probative because there is a reasonable likelihood that they could have impacted the ALJ's decision as to Plaintiff's disability claim, particularly the ALJ's analysis of whether Plaintiff's degenerative disc impairment qualifies under the Listing 1.04. Tr. 18-19. In fact, to qualify for disability under Listing 1.04, a claimant with degenerative disc disease with a compromised nerve root or the spinal cord must show that his or her degenerative disc disease is accompanied by:

> evidence of nerve root compression characterized by neuro-anatomic distribution of pain, limitation of motion of the spine, motor loss (atrophy with associated muscle weakness or muscle weakness) accompanied by sensory or reflex loss and, if there is involvement of the lower back, positive straight-leg raising test (sitting and supine).

20 C.F.R. § 404, Subpart P, App'x 1, 1.04; *see also Marchetti v. Colvin*, No. 13-CV-02581(KAM), 2014 WL 7359158, at *10 (E.D.N.Y. Dec. 24, 2014). Here, in the step 5 analysis, the ALJ determined that Plaintiff's lumbar back impairment did not qualify under Listing 1.04 because there was no evidence of nerve root compression, spinal arachnoiditis, lumbar stenosis, or Plaintiff's inability to ambulate effectively. Tr. 18-19. However, the operative and postoperative notes contained evidence that Plaintiff's nerve root decompression was repaired though the surgery, which imply the existence of nerve compression requested by Listing 1.04. Tr. 406-11. *See Fitscher v. Comm'r of Soc. Sec.*, 18-CV-848S, 2019 WL 5884614, at *3 (W.D.N.Y. Nov. 12, 2019) ("A reasonable probability of altering the ALJ's decision is found when the additional evidence undermines a conclusion on which the ALJ's decision rests.") (internal citations and quotations omitted). Additionally, the records demonstrate that Plaintiff had a positive leg raise,

which the ALJ referred to multiple times in her decision as being absent from the record, an antalgic gait and Plaintiff's favoring her right leg when walking. Tr. 403.

Furthermore, the records undermine the ALJ's wrongful conclusion that Plaintiff's back impairment was moderate and that her treatment was conservative. Tr. 22. Although conservative treatment may support an ALJ's determination of not disabled, *see Wilson v. Colvin*, No. 6:16-cv-06509-MAT, 2017 WL 2821560, at *6 (W.D.N.Y. June 30, 2017), surgery is not considered to be conservative treatment. *See, e.g., Mazyck v. Comm'r of Soc. Sec.*, 1:18-CV-627 EAW, 2020 WL 1503224, at *9 (W.D.N.Y. Mar. 30, 2020) (the use of medication and physical therapy was considered to be conservative as opposed to surgery or injections); *Wagner v. Saul*, 1: 18-CV-195 CJS, 2019 WL 3955421, at *3 (W.D.N.Y. Aug. 22, 2019) (treatment was considered to be conservative where no back surgery was recommended); *Pahl v. Berryhill*, 16-CV-538S, 2018 WL 4327813, at *5 (W.D.N.Y. Sept. 11, 2018) (plaintiff's "treatments of medication, physical therapy, and increased walking—as opposed to surgery or injections—were conservative" treatments). Arguably, if the record available to the ALJ prior to her decision contained only evidence of conservative treatment of Plaintiff's disc degeneration and radiculopathy, the records of Plaintiff's transforaminal lumbar interbody fusion surgery performed by Dr. Fahnbach clearly suggest that Plaintiff's treatment for her back impairment was much more invasive. Therefore, had the January 17, February 1, and February 14, 2017 notes, which contain evidence of the positive leg raise, as well as nerve root compression and decompression surgery, been properly reviewed, there is a possibility that Plaintiff could have been found disabled under the Listing. Therefore, the matter should be remanded for further proceedings for reconsideration of the evidence submitted by Plaintiff to the Appeals Council.

B.      Failure to Give Good Reasons for Not Crediting Dr. Bassig's Opinion

Plaintiff also argues that the ALJ committed legal error by rejecting the favorable opinion of her primary treating physician, Dr. Bassig. ECF. 17-1, at 18-25. The Court agrees.

As a general matter, an ALJ must defer to an opinion of a claimant's treating physician when making an RFC determination. *Halloran v. Barnhart*, 362 F. 3d 28, 32 (2d Cir. 2004) (internal and other citations omitted). It is well-settled that the medical opinion of the claimant's treating physician is given controlling weight when it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] record." *Burgess v. Astrue*, 537 F.3d 117, 128 (2d Cir. 2008) (internal citations omitted). If the ALJ determines that the opinion of a treating physician is not entitled to controlling weight, he must decide how much weight, if any, to give it. In doing so, the ALJ must explicitly consider what is known as "*Burgess* factors," which include "(1) the frequency, length, nature, and extent of Plaintiff's treatment; (2) the amount of medical evidence supporting the opinion; (3) the consistency of the opinion with the remaining medical evidence; and (4) whether the physician is a specialist." *Estrella v. Berryhill*, 925 F.3d 90, 95-96 (2d Cir. 2019) (internal citations omitted); *see also* 20 C.F.R. §404.1527 (c).[3]

When assigning weight to the opinion of a treating physician, the ALJ must comprehensively articulate her reasons for the weight assigned to it. *Halloran*, 362 F. 3d at 32 (citations omitted). The ALJ's "[f]ailure to provide 'good reasons' for not crediting the opinion of a claimant's treating physician is a ground for remand." *Snell v. Apfel*, 177 F.3d 128, 133 (2d Cir. 1999) (citation omitted). However, if a review of the record assures the Court "that the

---

[3] Changes to 20 C.F.R. § 404.1527 regarding the consideration of opinion evidence eliminated the application of the "treating physician rule" for claims filed on or after March 27, 2017. However, for purposes of this appeal, the prior version of the regulation applies.

10

substance of the treating physician rule was not traversed," in other words, if the record provides "good reasons" for assigning less than controlling weight to it, the Court should affirm the ALJ's decision. *Estrella*, 925 F.3d at 96.

Here, Dr. Bassig opined that Plaintiff was able to carry and lift less than ten pounds, stand, walk, and sit for less than two hours during an eight-hour day, was required to change positions between sitting and standing every five minutes, and needed to lie down every twenty minutes during a work shift. Tr. 299-02. He also determined that Plaintiff could never twist, stoop, crouch, or climb stairs or ladders, and should avoid all exposure to cold, heat, humidity, wetness, odors, and dust. *Id.* Dr. Bassig further opined that Plaintiff would be absent from work more than three times a month. Tr. 302. While acknowledging Dr. Bassig as Plaintiff's treating physician, the ALJ rejected his opinion because it was unsupported by medical signs, laboratory findings, and his treatment notes. Tr. 23. This was error. A "mere disagreement with [a treating physician's] conclusion, without medical evidence to corroborate that disagreement, is not a 'good reason' to disregard it." *Lloyd v. Comm'r of Soc. Sec.*, 335 F. Supp. 3d 472, 480 (W.D.N.Y. 2018).

Dr. Bassig's treatment notes and diagnosis of Plaintiff's impairments were consistent with the objective medical evidence found in the record and with his RFC assessment of Plaintiff's functional limitations. Specifically, his notes reveal Plaintiff's cervical and lumbar spine abnormalities, such as muscle spasms, limited range of motion, abnormal flexion and extension, pain in both spine regions that was elicited by motion, as well as his diagnosis of Plaintiff's disc herniation with radiculitis at the L5-S1 level, and cervical canal stenosis at the C6-C7 level. Tr. 303-19. Such findings were supported by objective medical evidence. Specifically, an x-ray performed on March 4, 2014 revealed that, compared with the 2009 testing, Plaintiff had degenerative changes with a loss of disc space height at the L5-S1 level and at the thoracolumbar

junction. Tr. 239. It also demonstrated that Plaintiff had a cervical spondylosis at the C5-C7 level with slight curvature of the cervical spine to the right. Tr. 240. An MRI performed on May 2, 2014, revealed three bulging discs at the L3-L4, L4-L5, and L5-S1 levels. Tr. 241. While having a mild narrowing of the canal at the L3-L4 and L4-L5 levels, Plaintiff had a right paracentral herniation of the disc at the L5-S1 level. Tr. 241. The record also contains references to an MRI performed on November 26, 2014, which demonstrated multilevel degenerative disc disease, particularly at the C6-C7 level, and which resulted in mild to moderate stenosis and mild bilateral neural foraminal stenosis. Tr. 295. An MRI performed two years later on July 6, 2016, continued to demonstrate Plaintiff's multilevel degenerative disc disease. Tr. 288. Specifically, it showed that Plaintiff had degenerative scoliosis with a right-convex curve from L1 to L5 and left-convex curve from L5 to S1, lumbar spondylosis, right-sided foraminal stenosis at the L5-S1 level, and bulging with herniation of three discs, *i.e.*, L2-L3, L4-L5, and L5-S1. Tr. 288, 290-92. The record also revealed that Plaintiff underwent two EMG tests performed on November 24, 2015 and July 19, 2016, which showed her having acute radiculopathy at the L5 level. Tr. 286, 295.

The ALJ's rejection of Dr. Bassig's opinion based on the length of his treatment was erroneous because there is no minimum period of treatment by a physician that is required for the physician's opinion to be afforded great weight. *See Wilson v. Colvin*, 213 F. Supp. 3d 478, 483-84 (W.D.N.Y. 2016) ("[a] treating source is afforded greater weight once he has examined the claimant a number of times and long enough to have obtained a longitudinal picture of the alleged impairment.") (internal citations and quotation omitted). Here, the record demonstrates that Plaintiff began treatment by Dr. Bassig on February 18, 2016, and saw him on seven subsequent occasions until October 13, 2016, when Dr. Bassig issued his opinion. Tr. 299-21. Similarly, the ALJ's rejection of Dr. Bassig's opinion because he is not a neurologist was unwarranted because

it has been well-recognized that it is an error for an ALJ to assign lesser weight to a non-specialist treating physician's opinion when that opinion is supported by specialist's opinion and by other evidence in the record. *See Valcourt v. Astrue*, No. 09-CV-4172 (DLI), 2011 WL 1304250, at *9 (E.D.N.Y. Mar. 31, 2011). Although Dr. Bassig was not a specialist himself, his findings as to the nature of Plaintiff's limitations stemming from her degenerative disc disease were supported by opinions of neurosurgeons Dr. Mattei and Dr. Fahrbach, as well by as the objective medical evidence contained in the record. Tr. 287-89, 405.

Similarly, the ALJ's rejection of Dr. Bassig's opinion based on its inconsistency with Plaintiff's own testimony about her travel to California prior to the hearing was not justified. Tr. 24, 78-79. Even though the ALJ has discretion to resolve conflicts in the record, including those related to a claimant's activities of daily living, *see Perozzi v. Berryhill*, 287 F. Supp. 3d 471, 492 (S.D.N.Y. 2018), the claimant's daily activities alone cannot constitute substantial evidence. In fact, a claimant's ability to function on a daily basis in a restrictive and isolated setting has been found to be insufficient to determine the claimant's employability because the ALJ, when making the RFC determination, is required to ascertain whether the claimant's impairments can interfere with his or her ability to function on a regular and continuous basis, *i.e.*, eight hours a day for five days a week. *See* SSR 96–8p, 1996 WL 374184, *2 (S.S.A. July 2, 1996)). "A claimant's participation in the activities of daily living will not rebut his or her subjective statements of pain or impairment unless there is proof that the claimant engaged in those activities for sustained periods of time . . . ." *Polidoro v. Apfel*, No. 98 CIV.2071(RPP), 1999 WL 203350, at *8 (S.D.N.Y. Apr. 12, 1999) ("A claimant need not be an invalid, incapable of performing any daily activities, in order to receive benefits under the SSA."). Here, Plaintiff's isolated short trip to California where she first flew on a plane and then was a passenger in the car while her niece drove them

along the Pacific Coast Highway was insufficient to discount the findings of Dr. Bassig's regarding Plaintiff's work-related limitations.

The Court also finds that the ALJ's rejection of Dr. Bassig's opinion, as well as her providing some weight to the opinion of consultative examiner Donna Miller, D.O., created an evidentiary gap in the record because there was no other opinion regarding Plaintiff's function limitations that the ALJ could have relied on to formulate Plaintiff's RFC. As a result, the ALJ formulated Plaintiff's RFC based on her own interpretation of objective medical evidence without the benefit of any medical opinion. This was not appropriate. *See, e.g., Berman v. Comm'r of Soc. Sec.*, 350 F. Supp. 3d 252, 257 (W.D.N.Y 2018) (an ALJ is not a medical professional and is not qualified to formulate a claimant's RFC based on the bare medical findings); *Wells v. Colvin*, 1:13-CV-00776 (MAT), 2015 WL 6829711, *2 (W.D.N.Y. 2015) (the ALJ was unqualified to interpret objective findings of degenerative changes within claimant's lumbar and cervical spine and evidence from physical examinations, and his decision to do so rather than obtain a medical opinion regarding claimant's functional limitations was an error).

Therefore, having failed to apply the proper legal standards in evaluating the opinion of Plaintiff's treating physician and having relied on no medical opinion regarding Plaintiff's functional limitations stemming from her back impairment prior to formulating Plaintiff's RFC, the ALJ committed legal errors requiring remand. *See, e.g., Ferraro v. Saul*, 806 F. App'x 13, 15-16 (2d Cir. 2020) (summary order) (remand is necessary where ALJ failed to apply the *Burgess* factors or to give "good reasons" for discounting treating sources' opinions: conclusory assertions that treating physician opinions were not supported by medical evidence, or were inconsistent with opinions by consulting physicians, were not "good reasons"); *Byrne v. Berryhill*, 752 F. App'x 96, 98 (2d Cir. 2019) (summary order) (ALJ's conclusory reasons for rejecting treating physician

14

opinions without consideration of the *Burgess* factors or the furnishing of good reasons for the weight assigned "contravenes the regulations and requires remand"). Because the Court has determined that remand of this matter for further administrative proceedings is necessary, the Court declines to reach a decision on Plaintiff's remaining arguments. *See, e.g., Bell v. Colvin*, No. 5:15-CV-01160 (LEK), 2016 WL 7017395, at *10 (N.D.N.Y. Dec. 1, 2016) (declining to reach arguments "devoted to the question whether substantial evidence supports various determinations made by [the] ALJ" where the court had already determined remand was warranted); *Morales v. Colvin*, No. 13cv06844 (LGS) (DF), 2015 WL 13774790, at *23 (S.D.N.Y. Feb. 10, 2015) (the court need not reach additional arguments regarding the ALJ's factual determinations "given that the ALJ's analysis may change on these points upon remand"), *adopted*, 2015 WL 2137776 (S.D.N.Y. May 4, 2015).

## CONCLUSION

For the foregoing reasons, Plaintiff's motion for judgment on the pleadings (ECF No. 17) is hereby GRANTED, and the Commissioner's motion for judgment on the pleadings (ECF No. 23) is DENIED. This case is hereby REMANDED to the Commissioner for further proceedings consistent with this order. The Clerk of Court is directed to enter judgment and close the case.

**IT IS SO ORDERED.**

Dated: August 26, 2020
Rochester, New York

_____
HON. FRANK P. GERACI, JR.
Chief Judge
United States District Court